OEHRLE et al. v. WILLIAM H. HORSTMANN CO.

(Circuit Court, E. D. Pennsylvania.  August 1, 1904.)

No. 40.

1. PATENTS—DESCRIPTIONS—FORMS—EXTENT.
    Where an inventor has placed his invention before the public in a form best fitted for practical use, and disclosed his conception of his invention, both in his description and in his claim, so as to accurately express his idea, he is entitled to the exclusive privilege of all other forms that can be embraced in the one claim, unless such other forms are disclaimed.

2. SAME—ORNAMENTAL ROPES—INFRINGEMENT.
    Patent No. 599,191, for an improvement in ornamental ropes or cords, issued to Franklin W. Oehrle, *held* not infringed.

In Equity.

Wm. C. Strawbridge, for complainants.
Henry N. Paul, Jr., and Joseph C. Fraley, for defendant.

HOLLAND, District Judge.  Complainants' bill for a preliminary injunction alleges that the defendant has infringed both claims in letters patent granted to Franklin W. Oehrle for a certain new and useful improvement in ornamental ropes or cords, No. 599,191.  Defendant admits manufacturing and selling two kinds of ornamental rope cords, slightly different from each other, which will hereafter be considered, of a construction, however, it claims identical with such ornamental cords as the specifications in the patent in question states to be old, excepting that, instead of one rope, two ropes are twisted together.  The defense is (1) that the claims in suit are invalid and void by reason of being old, having both been previously patented and sold upon the market without patents, and consequently anticipated by the prior art; (2) that the defendant's two ornamental cords sold upon the market do not infringe any claim of the patent in suit.

The complainants claim that their improvement is "of great utility," and, "if protected against infringers, the said letters patent will be of great value to them, and that great profits will accrue to them therefrom."  There is no allegation that these cords have been manufac-

¶ 1. See Patents, vol. 38, Cent. Dig. §§ 241, 371.

tured by the complainants or any one else, and placed upon the market under the letters patent. There was, however, an ornamental cord offered in evidence by the complainants, which was before the court, which they claimed was made in accordance with their letters patent. This fact, however, was denied by the defendant.

In passing upon the controlling issue in this case, it will not be necessary to consider the question of anticipation, as, in the view I take of it, the defendant's ornamental cords offered in evidence do not infringe the claims of the complainants; and, in order that it may plainly appear what the complainants claim to have patented, we will take the description of their invention given by Mr. Livermore, an expert witness called by the complainants, together with the specifications, wherein a complete understanding of the objections and defects in the prior constructions are fully set forth, and the improvement claimed by the complainants accurately described:

"The invention of the patent in suit relates, as is stated in the specification, 'to a class of ornamental cords or ropes formed, as to their exteriors, of colored silk or other ornamental thread, and largely employed in the construction of portières and in the construction of curtains'; the object of the invention being 'to produce an ornamental rope or cord, of simple and inexpensive construction, but more ornamental in appearance than such devices as heretofore manufactured.' Referring first to what is, perhaps, the simplest form of this material, namely, that shown in Fig. 1, it comprises two strands or lengths of comparatively strong, flexible material, such as wire or twine, marked A and B in Fig. 1, which lie in the axis of the finished material, and constitute a core therefor, which is the part that affords the tensile strength of the completed material, as well as being the part that supports the ornamental exterior threads. The said ornamental thread is coiled in a close spiral around one of the core strands, B, as shown in Fig. 1, while the other of the core strands, A, lies along the exterior of the coil of ornamental threads, and the two core strands, being twisted one upon the other, hold the coils of the ornamental thread between them at one point in the periphery of each coil or turn, and at the same time give the entire coil of the ornamental thread a spiral or helical position around the core. There is thus formed an ornamental cord, the external diameter of which is approximately double the diameter of the coil of the ornamental thread, which ornamental thread does not contribute to the strength of the cord to resist longitudinal strain; that being only the strength that is afforded by the core strands. The modified form of this material shown in Fig. 3 is made by reducing the size of the coils of ornamental thread from point to point along the core, thus giving the resulting ornamental cord the appearance of being formed of portions of successively larger and smaller diameters. In the construction shown in Fig. 5, the ornamental thread, instead of being coiled around one of the core strands so that its successive coils or turns are secured in place between an external and internal core strand, is made into relatively larger coils, pinched together to give each coil substantially the form of a figure 8; both of the core strands being external to the coils of ornamental thread, and holding the middle or waist of each of the coils or turns of ornamental thread between them. In this construction the core strands are twisted together, and thus clamp the coils of ornamental thread between them, and at the same time give the said projecting coils the helical arrangement around the core; there being in this case two helices, one comprising the half coils of the ornamental thread projecting from one side of the core strands, and the other comprising the half coils projecting from the other side of the core strands. There is thus formed by any of these constructions an ornamental cord, comprising a central core, making a practically solid axis for the cord, which is surrounded by a helix made of loops or turns of ornamental thread. Such chenille cord constitutes, of itself, an ornamental cord, and has been used as such for decorative purposes, but is defective in certain respects, as set forth in the specification of the patent in suit, as fol-

lows: 'The structure thus formed, however, is less ornamental than it would otherwise be, by reason of the exposure to view of one of the strands, A, B, throughout the length of the rope, and further because said continuous spiral appears as a hollow or coreless spiral, or one not formed on a substantial core, and lacks the appearance of strength or durability.' The structure or article forming the subject of the patent, while comprising, as an essential component thereof, a cord of the construction above indicated, is characterized by having an additional strand of ornamental materials, called a 'filling strand,' arranged spirally or helically around the core in the space or spaces between the successive turns of the helix of ornamental thread connected to said core, as above described; the said filling strand thus covering the exposed core strand as it appears in the space or channel between the convolutions of the helically arranged ornamental thread, and at the same time wholly or partially filling the said channel, so as to give the finished article the appearance of greater solidity and strength. This is explained in the specification of the patent as follows, immediately after the matter above quoted, which points out the defects of the simple chenille cord made as shown in Fig. 1: 'I overcome both of these defects by providing an ornamental cord or group of cords or threads or tape, D, which I wind about the structure shown in Fig. 1, said threads or cords, which I term the 'filling strand,' passing spirally about the core of said rope, and between the spirals formed or described by the loop strand, C, with the result, as shown in Fig. 2, that the core is filled out, whereby the symmetry and the apparent strength of the completed cord is increased, and the core strands completely concealed. The helically arranged coils of ornamental threads are called in the patent the 'loop strand,' as each turn of the coil of ornamental thread forms a loop projecting laterally from the core, or, in the construction shown in Fig. 5, forms two loops, projecting laterally from opposite sides of the core, and the specification states that it 'will be understood that any desired number of strands, A, B, may be employed to form the core, and that any desired number and character of threads may be employed in the formation of the loop strand and filling strand, without departing from the spirit of my invention.' The various kinds of filling strands that may be employed are more fully set forth in the specification as follows: 'The ornamental filling strand, D, may, of course, be formed as a single body, or of a series of threads, or of a chenille cord, or in fact of any desired ornamental textile material.' Claim 1 of the patent is as follows: '(1) As an article of manufacture, an ornamental rope or cord composed of a core, consisting of a plurality of strands twisted together, and a series of loops of ornamental thread, engaged with the strands of the core, and spirally disposed with reference to the same, and an ornamental filling strand wound upon said core in the spiral space or spaces left between the projecting loops, substantially as set forth.' Claim 2 is as follows: 'As an article of manufacture, an ornamental rope or cord, composed of a core consisting of a plurality of strands twisted together, a tubular coil of ornamental threads passing spirally about and bound to said core by the engagement of one of the core strands within its hollow interior, and an ornamental filling strand wound upon said core in the space not occupied by the tubular coil, substantially as set forth.' "

It is clear from a consideration of the foregoing testimony of Mr. Livermore, and also from a consideration of the specifications of the patent itself, that the inventor did not intend to limit himself to the precise and exact form and construction of the filling strand illustrated in the drawings in the patent in suit. He states, "I describe two forms of convenient embodiment of my invention," indicating that other forms not illustrated might also embody it, and, further, "that the ornamental filling strand, D, may, of course, be formed as a single body, or of a series of threads, or of a chenille cord, or in fact of any desired ornamental textile material." Indeed, it was unnecessary for him to indicate his intention to claim all other forms of embodiment possible, as an inventor who places his invention before the public in a form best fitted for practical use, and both in his description and his

claim discloses his conception through that concrete instrument which most accurately expresses his idea, is entitled to the exclusive privilege of all other forms that can be embraced in the one claimed, unless they are disclaimed. In contemplation of law, after he has fully described his invention, and shown its principles, and claimed it in a form which perfectly embodies it, unless he disclaims other forms, he is deemed to claim every form in which his invention may be copied. Murphy v. Eastham, 5 Fish. Pat. Cas. 306, 17 Fed. Cas. 1034, No. 9,949; Winans v. Denmead, 15 How. 330, 14 L. Ed. 717; Grier v. Castle (C. C.) 17 Fed. 523. All equivalents are covered, whether the inventor thought of them or not. Burden v. Corning, 2 Fish. Pat. Cas. 477, 4 Fed. Cas. 701, No. 2,143. These rules have been observed by the courts in the construction of claims, but they do not warrant us in broadening such claims beyond what the inventor is entitled to, considering the prior art; and, in the case of patents for improvements, it is necessary to consider the state of the art. What is old, the public is entitled to use, and a claim couched in general terms must be restricted to such other forms and equivalents. The forms used in the prior art must be protected from inclusion. Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059.

It will be observed that each of the claims refers broadly to an ornamental filling strand, without defining any particular form or construction of the strand. Upon referring to the specifications, we discover that the defect in the old ornamental cord is lack of substantial appearance and of strength and durability of core, and it is less ornamental. To overcome both these defects, the defendant conceived the idea of filling up the spaces between the ornamental loops with an "ornamental filling strand," which added to the apparent strength, durability, and substantiality of the core, and at the same time made the finished product more ornamental. Any kind of ornamental filling strand that can be used is fairly within the contemplation of complainants' claims, but it must be a "filling strand," and it may be made of a single thread, or a series of threads. One is the equivalent of the other. Or it may be a "chenille cord," but chenille cords are of various construction, and may be used so long as they are so constructed as to make a filling strand. Chenilles are frequently made in the shape of a soft, velvety cord, or of silk or worsted, and, no doubt, in this form it could be used as a filling strand; but I take it that it is essential that this filling strand should, when used, fill up the spaces between the ornamental groups of cords, as shown in figures 2, 4, and 5. The manufacture and sale of the article shown in figure 1, either as there represented, or in connection with a similar cord twisted together, is justified by the prior state of the art. The fact that one of such cords of the old ornamental rope is twisted with the other is not a duplication of the complainants' improvement, as it does not result in giving an appearance of additional strength, durability, and substantiality to the core of the finished product. The defendant's product is precisely the rope shown in figure 1, except that, in order to produce two-colored effects and to increase the compactness of the ornamental loops, two of these old constructions, represented in figure 1, are twisted together. This does not, however, increase the apparent strength and substantiality of the core,

because, where it can be seen between the loops, its lack of strength is apparent; the only difference being that there are four core strands in the defendant's product, instead of two, as in the old, represented by figure 1. And the difficulty with which we are met, and which was not removed even by a suggestion from the complainants in their contention that their patent is infringed by the structure of the defendant, is that they are unable to point out which of the two cords twisted together is the offending member of the defendant's product, or the one that takes the place of the "ornamental filling strand" in the complainants' patent. From the claims we learn there are three important members of complainants' improved ornamental cord, to wit, "plurality of strands twisted together" (or the core), "a series of loops of ornamental threads" (or the ornamental lateral loops), and "an ornamental filling strand."

Complainants' expert, Mr. Livermore, admits his inability to state which of the cords twisted together by the defendant is the "filling strand," and which the "plurality of strands twisted together," forming the core; but says that either of the constituent parts of the defendant's product can be regarded as the equivalent of either the "plurality of strands twisted together," or the "ornamental filling strand" of the complainants' product. In other words, their expert being unable to decide and point out and positively identify the element of the defendant's product which infringes upon the claim of the complainants, the court is left to guess as to which is the old and which the new, which is to take the place and act as an equivalent for the ornamental filling thread of the complainants.

In addition to the reasons already given, without entering into an elaborate consideration of the prior art, we will add that the testimony and exhibits show that the defendant was clearly within its rights to manufacture and sell this kind of ornamental cord, as it is old and long known to the trade, and this appears from previous patents and exhibits offered by the defendant.

Let a decree be drawn dismissing the bill, with costs.